USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/30/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CYNTHIA E. NEESEMAN,  :
                  Plaintiff, :
                                        :
             -against- : 17 Civ. 1766 (LGS)
                                        :
MT. SINAI WEST, et al., : **OPINION AND ORDER**
                  Defendant. :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

     Plaintiff Cynthia E. Neeseman, acting pro se, sues four full-service hospitals, four long-term care facilities, and several John Doe defendants under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, and various state common law causes of action, including medical malpractice, for injuries related to the care her deceased husband received from the defendant institutions. The eight defendant institutions either move to dismiss the complaint or seek judgment on the pleadings. For the reasons stated below, as to the federal claims, the full-service hospital Defendants' motions are granted, and the long-term care Defendants' motions are converted to motions for summary judgment and granted. The Court declines to exercise supplemental jurisdiction over the state law claims.

### I. BACKGROUND

     The facts summarized below are drawn from the Complaint and its attached chronology, which the Complaint incorporates by reference. The allegations in the Complaint are assumed to be true and are construed in the light most favorable to Plaintiff as the non-moving party solely for purposes of this decision. *See Spak v. Phillips*, 857 F.3d 458, 463 n.2 (2d Cir. 2017).

     On December 5, 2014, Plaintiff's husband Samuel Friedar was taken to Roosevelt Hospital (now Defendant Mount Sinai West) by ambulance. There, Friedar was given medication for seizures and soon after developed pneumonia. Friedar was then moved to the

ICU, where he was placed on a respiratory ventilator with a gastric feeding tube. Over Plaintiff's persistent objections, Friedar was intubated with the wrong type of feeding tube, which caused him to aspirate food from his stomach to his mouth. When he was finally given the correct type of tube, it was used incorrectly, which caused Friedar to aspirate stomach contents and become unresponsive.

The Chief Medical Officers of Roosevelt and Defendant Mount Sinai Hospital conferred as to Friedar's treatment. Although Plaintiff insisted that Friedar should have been transferred to Mount Sinai Hospital, the two decided to transfer him to Defendant Select Specialty-Northeast New Jersey Hospital ("Select Specialty"), a long-term acute care ("LTAC") hospital.

Friedar was transferred to Select Specialty on March 20, 2015. There, Friedar's feed was diluted, and he thus only received 55% of the appropriate nutrition for 18 days. In spite of this, Friedar was recovering. In April 2015, he was taken off the ventilator. Around that time, a malfunction in his gastric suctioning machine halted his recovery and caused him to develop pneumonia again, and he was put back on the ventilator.

On April 30, 2015, Friedar was transferred to Cliffside, a sub-acute facility in Flushing. Cliffside lacked the appropriate equipment or expertise necessary for Friedar's care. Thus, Plaintiff called an ambulance to take Friedar to Defendant Mount Sinai Hospital. There, Friedar was put into isolation. His feeding tube became clogged and had to be replaced. Instead of ordering a new tube, the doctors cut and patched the damaged tube.

On June 2, 2015, Friedar was transferred to The Pavilion at Queens for Rehabilitation and Nursing ("Pavilion"), a Defendant, with the patched feeding tube still in place. The Pavilion staff had promised to provide Plaintiff equipment that could provide intermittent suctioning to

2

remove stomach contents that could be regurgitated and aspirated.  Pavilion did not order the correct equipment, and Friedar again aspirated his gastric contents and developed pneumonia.

On June 6, 2015, Friedar was transferred to New York Presbyterian Queens Hospital, where the patched feeding tube was replaced.  At various times, the staff mistakenly put food into the port to be used for suctioning instead of the feed port.  On June 17, 2015, Friedar was transferred back to Pavilion.  Plaintiff offered to provide the staff with a new portable device that could provide intermittent suctioning, but the Pavilion owner refused the offer.  Friedar became unresponsive and developed sepsis.

On July 14, 2015, Friedar was sent back to New York Presbyterian Queens Hospital to be treated for sepsis.  There, he still did not receive intermittent suctioning even though Friedar's GI doctor there, who was also the consulting GI physician at Pavilion, had prescribed it.  After the sepsis was cured, the case manager at New York Hospital Queens tried to transfer Friedar to a sub-acute facility.

On August 6, 2015, Plaintiff transferred Friedar to Defendant Kindred Hospital New Jersey-Wayne ("Kindred"), an LTAC facility where he received intermittent suctioning.  Visitors to Friedar's roommate contaminated the room, causing Friedar to develop a *Serratia marcescens* infection.  Friedar became unresponsive for about ten days.  He also developed ulcers on his feet, legs and hips due to lack of movement.

On October 5, 2015, Friedar was transferred to Defendant Woodmere Rehabilitation and Health Care Center ("Woodmere"), a sub-acute facility.  Woodmere lacked the equipment to perform intermittent suctioning and refused to provide a sterile environment and isolation as promised.  Friedar's feed was increased, causing him to regurgitate gastric contents and he again developed pneumonia.

On October 7, 2015, Woodmere transferred Friedar to Defendant South Nassau Communities Hospital ("South Nassau") on Long Island, where he again received inadequate care. South Nassau declared Friedar stable and refused to keep him any longer. Plaintiff transferred him back to the Pavilion on October 21, 2015, while preparing home care facilities. The Pavilion continued to refuse to provide intermittent suctioning and again caused him to develop pneumonia.

Friedar was transferred back to South Nassau on November 14, 2015, where he again received substandard treatment. The staff destroyed another feeding tube, admitting to not knowing how to use it, and discontinued its use instead of consulting on the tube's proper use. South Nassau worsened Friedar's leg sores by using pneumatic compression to squeeze them. Plaintiff was not informed that tissue in Friedar's extremities had become necrotic until the doctor told her that his right foot needed to be amputated.

On November 20, 2015, Plaintiff ordered a medical Learjet ambulance to transfer Friedar to the Mayo Clinic in Jacksonville, Florida. Without notifying Plaintiff or Friedar's doctor at the Mayo Clinic, South Nassau employees declared Friedar too unstable to be transferred and turned the Learjet ambulance crew away. South Nassau staff contacted the Mayo Clinic to inform them that the transfer was cancelled. Friedar died on November 22, 2015.

## II.  STANDARD

### A.  Motions to Dismiss

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party, *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d at 566 (2d Cir. 2016), but gives "no effect to legal conclusions couched as factual allegations," *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d

4

Cir. 2017). To withstand a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Courts, however, read pro se pleadings with "special solicitude" and interpret them "to raise the strongest arguments that they suggest." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015); *see also Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008) ("[D]ismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases.").

### B. Leave to Amend

Leave to amend "should be 'freely give[n] . . . when justice so requires,' Fed. R. Civ. P. 15(a)(2), but should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (some internal quotation marks omitted). "A proposed amendment . . . is futile when it could not withstand a motion to dismiss." *F5 Capital v. Pappas*, 856 F.3d 61, 89 (2d Cir. 2017).

### C. Motions to for Judgment on the Pleadings

The Court reviews a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) under the same standard as a Rule 12(b)(6) motion to dismiss. *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). On a Rule 12(c) motion, the Court may consider "the complaint, the answer, any written documents attached to them . . . any matter of which the court can take judicial notice for the factual background of the case[,] . . .

5

any written instrument attached . . . as an exhibit, materials incorporated . . . by reference, and documents that, although not incorporated by reference, are integral" to the pleadings. *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (internal quotation marks omitted).

### D. Conversion to Summary Judgment

Where a motion to dismiss presents matters outside of the pleadings, the court may consider them but only by converting the motion into one for summary judgment under Federal Rule of Civil Procedure 56. Fed. R. Civ. P. 12(d). To do so, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.*; *see also Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 67–68 (2d Cir. 2014) (affirming a district court's conversion of a motion to dismiss into a motion for summary judgment where the opposing party was given sufficient notice and an opportunity to respond). Although formal notice is not required ordinarily where a party "should reasonably have recognized the possibility" of such conversion, for a pro se litigant, "[n]otice is particularly important because the *pro se* litigant may be unaware of the consequences of his failure to offer evidence bearing on triable issues." *Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009) (alteration in original) (citation and internal quotation marks omitted). "Accordingly, *pro se* parties must have 'unequivocal' notice of the meaning and consequences of conversion to summary judgment." *Id.* at 307–08 (citation omitted). "[A]bsent a clear indication that the *pro se* litigant understands the nature and consequences of Rule 56 . . . he or she must be so informed by the movant in the notice of motion or, failing that, by the district court." *Id.* at 308 (citation omitted). That notice should include a short and plain statement that all assertions of material fact in the movant's affidavits will be taken as true by the district court unless the *pro se* litigant contradicts those

factual assertions in one or more affidavits made on personal knowledge containing facts that would be admissible in evidence or by submitting other materials as provided in Rule 56(e). *McPherson v. Coombe,* 174 F.3d 276, 282 (2d Cir. 1999).

Summary judgment is appropriate where the record before the court establishes that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of informing the court of the basis for the summary judgment motion and identifying those portions of the record that demonstrate the absence of a genuine dispute as to any material fact. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *In re "Agent Orange" Prod. Liab. Litig.,* 517 F.3d 76, 87 (2d Cir. 2008); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

### III. DISCUSSION

The Complaint asserts a single federal claim against all defendants, for violation of the EMTALA, alleging inadequate treatment and improperly permitting him to be discharged and transferred from their care. Defendants Mount Sinai West and New York Hospital Queens move for judgment on the pleadings under Fed. R. Civ. P. 12(c) on the ground that they fulfilled their obligations under EMTALA when they admitted Friedar for inpatient treatment and provided him the requisite care. Defendants Mount Sinai Hospital (together with Mount Sinai West, "Mount Sinai") and South Nassau move to dismiss the Complaint under Rule 12(b)(6) for the same reason. Defendants Select Specialty, Pavilion, Woodmere and Kindred move to dismiss the Complaint under Rule 12(b)(6) because, as institutions without emergency departments, they are not subject to EMTALA.

7

**A. Claims Against Mt. Sinai, New York Hospital Queens and South Nassau**

The complaint fails to state an EMTALA claim against Mount Sinai, New York Hospital Queens and South Nassau (collectively, the "Hospital Defendants") because it does not allege that Friedar was denied emergency care. The complaint alleges that Friedar was admitted for inpatient care upon arriving at each of these hospitals, thus clearing them of liability under EMTALA.

"The purpose of EMTALA is to prevent 'patient dumping,' the practice of refusing to provide emergency medical treatment to patients unable to pay, or transferring them before emergency conditions [are] stabilized." *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 792 (2d Cir. 1999) (alteration in original) (internal quotation marks and citation omitted). EMTALA applies to hospitals that participate in the federal Medicare program and imposes two main obligations on hospitals within its purview. "First, when an individual shows up for treatment at a hospital's emergency room, 'the hospital must provide for an appropriate medical screening examination . . . to determine whether or not an emergency medical condition' exists." *Id.* (quoting 42 U.S.C. § 1395dd(a)). "Second, if the screening examination indicates that an emergency medical condition does exist, the hospital ordinarily must 'stabilize the medical condition' before transferring or discharging the patient." *Id.* (quoting 42 U.S.C. § 1395dd(b)(1)(A)). "EMTALA is not a substitute for state law on medical malpractice. It was not intended to guarantee proper diagnosis or to provide a federal remedy for misdiagnosis or medical negligence." *Id.* (citations and internal quotation marks omitted).

Although the Second Circuit has not addressed the issue, the Fourth and Ninth Circuits, as well as district courts throughout the country, have held that a hospital's obligations under EMTALA end when the hospital admits a patient for inpatient care. *See Bryant v. Adventist*

8

*Health Sys./West,* 289 F.3d 1162, 1167 (9th Cir. 2002); *Bryan v. Rectors & Visitors of Univ. of Va.*, 95 F.3d 349, 352 (4th Cir. 1996); *Cooper v. City of New York*, No. 14 Civ. 3698, 2016 WL 4491719, at *3 (E.D.N.Y. Aug. 25, 2016); *Lopez v. Contra Costa Reg'l Med Ctr.*, 903 F. Supp. 2d 835, 840 (N.D. Cal. 2012); *James v. Jefferson Reg'l*, No. 4:12 Civ. 267, 2012 WL 1684570, at *3 (E.D. Mo. May 15, 2012); *Money v. Banner Health,* No. 3:11 Civ. 800, 2012 WL 1190858, at *9 (D. Nev. Apr. 9, 2012); *Hussain v. Kaiser Found. Health Plan,* 914 F. Supp. 1331, 1335 (E.D. Va. 1996). The Centers for Medicare & Medicaid Services ("CMS"), the federal agency responsible for interpreting and enforcing EMTALA, promulgated a rule in 2003 adopting this same view. *See* 42 C.F.R. § 489.24(d)(2) ("If a hospital has screened an individual . . . and found the individual to have an emergency medical condition, and admits that individual as an inpatient in good faith in order to stabilize the emergency medical condition, the hospital has satisfied its special responsibilities under this section with respect to that individual."). New York state courts have agreed. *See Lear v. Genesee Mem'l Hosp.,* 678 N.Y.S.2d 228, 229-30 (4th Dep't 1998), *leave to appeal denied*, 708 N.E.2d 179 (1999) (dismissing EMTALA claim because the hospital admitted plaintiff, finding that EMTALA applies only to emergency care); *Whitney-Carrington v. N.Y. Methodist Hosp.*, No. 26096/98, 2001 WL 856133, at *1 (N.Y. Sup. Ct. Jan. 8, 2001), *aff'd*, 734 N.Y.S.2d 490 (2d Dep't 2001) (denying motion to amend to add EMTALA claim where patient was admitted and operated on due to pregnancy complications). *But see Moses v Providence Hosp. and Med. Ctrs., Inc.*, 561 F.3d 573, 582 (6th Cir. 2009) (citing *Thornton v. Sw. Detroit Hosp.*, 895 F.2d 1131, 1134 (6th Cir. 1990)). The Court is persuaded by these authorities.

While the Complaint alleges that Friedar received substandard care from each of the Hospital Defendants, drawing every reasonable inference in Plaintiff's favor, the Complaint

9

acknowledges that Friedar was admitted to and received treatment at each hospital. As alleged in the Complaint, Friedar was treated at Roosevelt for over three months and at Mount Sinai Hospital for over a month. He had two stays at New York Hospital Queens, lasting eleven days and twenty-three days, and two stays at South Nassau, lasting fourteen days and eight days, before unfortunately passing away. The Complaint thus fails to state a claim under EMTALA. The Hospital Defendants' Rule 12(b)(6) and 12(c) motions are granted as to the EMTALA claims.

Leave to amend the EMTALA claim against the Hospital Defendants is denied. As explained, the Complaint provides a detailed narrative indicating that Plaintiff was admitted and treated at each of these hospitals and was not turned away, thus clearing them of liability under EMTALA. Any amendment of the Complaint would thus be futile.

B.  Claims Against Select Specialty, Pavilion, Kindred and Woodmere

Sufficient cause exists to convert the motions to dismiss of Select Specialty, Pavilion, Kindred and Woodmere (collectively, the "Long-Term Care Defendants") to motions for summary judgment. First, the Long-Term Care Defendants' notices pursuant to Local Civil Rule 12.1 filed contemporaneously with their moving papers constitutes sufficient notice for Rule 12(d) purposes. *See, e.g., Redman v. N.Y. State Dep't of Corr. Servs.*, 541 F. App'x 52, 53 (2d Cir. 2013) (summary order) (finding Local Civil Rule 12.1 statement provided sufficient notice to pro se party that a motion to dismiss may be converted to a motion for summary judgment). Second, Plaintiff likewise submitted evidence outside the pleadings in response to Long-Term Care Defendants' motions. Because Plaintiff had unequivocal notice that these Defendants' motions might be converted to motions for summary judgment, Long-Term Care Defendants' motions are treated as motions for summary judgment.

The Long-Term Care Defendants are not subject to EMTALA because they are not "participating hospitals" with "emergency departments." *See* 42 U.S.C. § 1395dd(a), (e)(2). "It is clear that EMTALA does not apply to all health care facilities; it applies only to participating hospitals with emergency departments." *Rodriguez v. Am. Int'l Ins. Co. of P.R.*, 402 F.3d 45, 48 (1st Cir. 2005); *accord Hardy*, 164 F.3d at 792 (explaining that EMTALA's stabilization requirement applies once a hospital's emergency room has determined that an emergency medical condition exists); *Cooper*, 2016 WL 4491719 at *2 (EMTALA's requirements apply to "Medicare-participating hospital[s] with . . . emergency room[s]") (quoting 42 U.S.C. § 1395dd(a)).

Each of the Long-Term Care Defendants has presented competent evidence that it is not a "participating hospital" with an "emergency department" under the meaning of EMTALA, and thus is not subject to the Act. Each has submitted sworn statements and state registration documents indicating that they do not provide emergency care, and are not licensed to do so. Select Specialty and Kindred have provided evidence that they are LTAC hospitals that do not have emergency rooms, and Pavilion and Woodmere have provided evidence that they are not hospitals at all.

Plaintiff fails to provide contrary evidence. Instead, her affidavits and their attachments mostly detail the inadequate care her late husband allegedly received at these institutions and provide unavailing legal argument as to why they should be subject to EMTALA. Although she paints an extremely sympathetic picture, there is no evidence in the record to suggest that the Long-Term Care Defendants are subject to EMTALA, and no reasonable trier of fact could conclude that they are. Summary judgment is thus granted as to the EMTALA claims against the Long-Term Care Defendants.

### C. State Law Claims

In addition to her EMTALA claim, Plaintiff brings New York state law claims of medical malpractice and loss of consortium against all Defendants, and false imprisonment against South Nassau. "The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Given this threshold dismissal, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Mount Sinai West's and New York Hospital Queens's motions for judgment on the pleadings, and Mount Sinai Hospital's and South Nassau's motions to dismiss, are GRANTED as to EMTALA claims. As to these motions to dismiss, leave to amend is DENIED. The Long-Term Care Defendants' motions to dismiss are converted to motions for summary judgment, which are GRANTED as to EMTALA claims. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, which are dismissed with leave to renew in a state court of appropriate jurisdiction, provided that they were timely filed when brought in this case.

The Clerk of Court is directed to close the case and all pending motions.

Dated: January 30, 2018
     New York, New York

_____
LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE